# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

LIXIN AZARMEHR, *et al.*,

     Plaintiffs

v.

WELLS FARGO CLEARING SERVICES
LLC (a/k/a WELLS FARGO ADVISORS),

     Defendant

Case No.: 2:25-cv-00088-APG-BNW

**Order Granting in Part Defendant's
Motion to Dismiss**

[ECF No. 30]

Plaintiffs Lixin Azarmehr, JL Real Estate Development Corporation (JL RED), Nevada Skilled Nursing Lender LLC (NSN Lender), and Nevada Skilled Nursing Development, LLC (NSN Developer) sue Wells Fargo Clearing Services LLC for claims arising from financial advice Wells Fargo gave the plaintiffs in March 2017. The plaintiffs bring claims for fraudulent misrepresentation; negligent misrepresentation; breach of fiduciary duty; respondeat superior and failure to supervise;[1] breach of contract; tortious interference with contract; and unjust enrichment. Wells Fargo moves to dismiss the claims as time-barred, barred by the economic loss doctrine, and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

I deny the motion to dismiss the fraudulent and negligent misrepresentation claims because the plaintiffs plausibly allege that Wells Fargo promised not to give advice that increased legal risks, the plaintiffs justifiably relied on that promise, and Wells Fargo's advice ultimately caused the Securities and Exchange Commission (SEC) investigation and enforcement case. I dismiss the breach of fiduciary duty claim because the plaintiffs have not plausibly

---

[1] Respondeat superior is not an independent cause of action, but rather a theory for assigning liability to employers for their employees' negligence. *Okeke v. Biomat USA, Inc.*, 927 F.Supp. 2d 1021, 1028-89 (D. Nev. 2013).

alleged that Wells Fargo's failure to follow up on red flags caused the SEC investigation and enforcement case. I dismiss with prejudice the failure to supervise claim because it is time-barred. I dismiss the breach of contract claim because the plaintiffs merely recite the elements of the claim without plausible allegations to support it. I dismiss the tortious interference with contract claim because the plaintiffs have not plausibly alleged that Wells Fargo disrupted the contract between NSN Lender and NSN Developer. Finally, I dismiss the unjust enrichment claim because the plaintiffs have not pleaded the claim in the alternative of an allegedly invalid or unenforceable contract.

## I.    BACKGROUND

The parties are familiar with the facts, so I repeat them only as necessary to resolve the pending motion. The plaintiffs allege the following: Lixin Azarmehr is an immigration attorney and real estate developer who focuses on the EB-5 foreign investment immigration program. ECF Nos. 24 at 2; 25-2 at 14. She is the CEO of JL RED and a member of NSN Lender and NSN Developer. ECF Nos. 24 at 2-3; 25-2 at 14. From 2015 to 2019, NSN Lender aggregated $14 million of foreign investors' funds, which it lent to NSN Developer to build three nursing facilities that would create enough jobs to qualify the 27 foreign investors[2] for Green Cards under the EB-5 program. ECF Nos. 24 at 6; ECF No. 25-2 at 12. The EB-5 regulations and the investments' offering documents required the funds to be loaned for developing and operating these nursing facilities, known as the Nevada Project. ECF Nos. 24 at 6; 25-1 at 7; 25-2 at 9.

Brandon Ly worked for Wells Fargo as an advisor and held himself out as having extensive experience with EB-5 investments. ECF No. 24 at 4, 7. Ly targeted Azarmehr and her

---

[2] There were originally 28 investors but one dropped out and received a refund. ECF No. 24 at 18.

companies, working to build a relationship of trust by sharing his personal contact information and traveling with her to China to meet the co-founder of JL RED to persuade him to open an account with Wells Fargo. *Id.* at 7-8.  He also introduced Azarmehr to a successful EB-5 business executive who vouched for Ly's credibility and capability to manage EB-5 investments. *Id.* at 9.  Ly had copies of NSN Lender's documents with the EB-5 project terms requiring the funds to be used for the Nevada Project. *Id.* at 9-10.

In March 2017, Ly advised Azarmehr to move $10 million of the EB-5 funds into a new NSN Developer brokerage account at Wells Fargo and to open a line of credit for JL RED using the EB-5 funds in that account as collateral. *Id.* at 8-10.  Later that month, in reliance on Ly's advice, JL RED drew $8.99 million from its line of credit to pay a loan for an unrelated project in California. *Id.* at 9, 12.  Azarmehr had concerns about the legality of the transactions and told Ly she "did not want to increase the risks to the Nevada Project or violate any laws, rules, or regulations." *Id.* at 10.  Ly understood her request and told Azarmehr that using and investing the funds as he advised would not violate any laws, rules, or regulations, and that it would not "increase the legal risks to [her] and her companies." *Id.* at 10-11.  When Wells Fargo closed the brokerage account in 2021, the investments reaped the plaintiffs a profit of over $300,000. *Id.* at 13.  Wells Fargo earned over $144,000 in advisory fees and over $1.19 million in interest on the line of credit. *Id.*

The Guaranty of Account that pledged the brokerage account as collateral for the line of credit allowed Wells Fargo to issue margin calls on any of the plaintiffs' accounts without notice, to satisfy the collateral requirements for the line of credit. *Id.* at 12.  From 2018 to 2020, Wells Fargo drew eight margin calls totaling over $1.1 million from the brokerage account, with the first call occurring 625 days after NSN Developer opened the account. *Id.* at 12-13.

1    NSN Developer and JL RED's account agreements with Wells Fargo included a Code of

2    Ethics promising Wells Fargo employees would conduct business activities in an "honest,

3    ethical, and legal manner, and in accordance with all applicable laws, rules, and regulations and

4    our policies and procedures." *Id.* at 11.  In September 2019, Wells Fargo fired Ly without

5    notifying Azarmehr, even after she inquired as to Ly's status. *Id.* at 14.  Wells Fargo then

6    reported Ly to FINRA for an investigation, which he did not cooperate with, leading to his

7    permanent debarment from working with a regulated entity. *Id.* at 14-15.  Wells Fargo did not re-

8    examine Ly's recommendations to the plaintiffs after his termination and investigation. *Id.* at 14.

9        In February 2022, an SEC attorney called Azarmehr and questioned her about the Nevada

10   Project. *Id.* at 15.  The attorney asked about the EB-5 business, where the companies' bank

11   accounts were, and who spoke to the EB-5 investors. *Id.*  The SEC sent Azarmehr a subpoena

12   seeking documents from NSN Lender and NSN Developer, and deposed Azarmehr and her

13   secretary. *Id.*  In September 2023, the SEC notified Azarmehr and JL RED of its decision to file

14   an enforcement action against them for violations of the Securities Act of 1933 and the Securities

15   Exchange Act of 1934. *Id.* at 16.  The SEC's complaint alleged the plaintiffs conducted a

16   fraudulent scheme by using the EB-5 funds meant for the Nevada Project for JL RED's unrelated

17   projects. *Id.*  The plaintiffs spent over $2 million in legal fees defending against the SEC's suit

18   and allege "substantial economic and reputational harm." *Id.* at 19.

19       The plaintiffs completed one of the three nursing facilities, which will create enough jobs

20   for all the foreign investors to qualify for visas under the EB-5 program. *Id.* at 18.  Accordingly,

21   the other two facilities are no longer designated for EB-5 investments. *Id.*

22       Based on these allegations, the plaintiffs filed this lawsuit.  Wells Fargo now moves to

23   dismiss it.

## II.    ANALYSIS

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  However, I do not assume the truth of legal conclusions merely because they are cast in the form of factual allegations in the complaint. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

When a plaintiff alleges a unified course of fraudulent conduct, the claim sounds in fraud and the pleading as a whole is subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  Here, the plaintiffs' claims for fraudulent and negligent misrepresentation and breach of fiduciary duty are subject to Rule 9(b)'s standard because they sound in fraud. *See Larson v. Homecomings Fin., LLC*, 680 F. Supp. 2d 1230, 1234 (D. Nev. 2009) (plaintiffs' claim for negligent misrepresentation failed because it was not pleaded with specificity under Rule 9(b)); *Nev. State Bank v. Jamison Fam. P'ship*, 801 P.2d 1377, 1382 (Nev. 1990) (finding a breach of fiduciary duty is fraud).  Rule 9(b) requires the plaintiffs to "state with particularity the circumstances constituting fraud."  Pleading with particularity requires the plaintiffs to state the "who, what, when, where, and how of the misconduct charged." *Kearns*, 567 F.3d at 1124 (quotation omitted).  This requires "more than the neutral facts necessary to identify the transaction," including "what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy*

1   *Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (simplified).  When the facts of fraud are in the

2   defendant's exclusive control, the plaintiff can allege facts based on information and belief, but

3   the plaintiff must state the "factual basis for the belief." *Neubronner v. Milken*, 6 F.3d 666, 672

4   (9th Cir. 1993).

5       **A.  The statute of limitations began to run no later than February 2022 and bars the**

6           **failure to supervise claim.**

7       "A claim may be dismissed as untimely pursuant to a 12(b)(6) motion only when the

8   running of the statute of limitations is apparent on the face of the complaint." *United States ex*

9   *rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013)

10  (simplified).  For a claim brought under Nevada law, a limitations period begins to run "from the

11  day the cause of action accrued." *Clark v. Robison*, 944 P.2d 788, 789 (Nev. 1997) (per curiam).

12  A cause of action generally accrues "when the wrong occurs and a party sustains injuries for

13  which relief could be sought." *Petersen v. Bruen*, 792 P.2d 18, 20 (Nev. 1990); *see also State ex*

14  *rel. Dep't of Transp. v. Pub. Emps.' Ret. Sys. of Nev.*, 83 P.3d 815, 817 (Nev. 2004) (en banc)

15  ("A cause of action accrues when a suit may be maintained thereon." (quotations omitted)).

16  Nevada has adopted the discovery rule, and thus time limits generally "do not commence and the

17  cause of action does not 'accrue' until the aggrieved party knew, or reasonably should have

18  known, of the facts giving rise to the damage or injury." *G & H Assocs. v. Ernest W. Hahn, Inc.*,

19  934 P.2d 229, 233 (Nev. 1997).

20      Fraudulent and negligent misrepresentation are governed by a three-year statute of

21  limitations. Nev. Rev. Stat § 11.190(3)(d); *Kancilia v. Claymore & Dirk Ltd. P'ship*, No. 61116,

22  130 Nev. 1203, 2014 WL 3731862, at *1 (Nev. July 24, 2014).  Breach of fiduciary duty is also

23  governed by a three-year statute of limitations. *In Re AMERCO Derivative Litig.*, 252 P.3d 681,

703 (Nev. 2011) (en banc).  Negligent failure to supervise is governed by a two-year statute of limitations. Nev. Rev. Stat § 11.190(4)(e).  Breach of contract is governed by a six-year statute of limitations. Nev. Rev. Stat § 11.190(1)(b).  Tortious interference with contract is governed by a three-year statute of limitations. Nev. Rev. Stat § 11.190(3)(c); *see Stalk v. Mushkin*, 199 P.3d 838, 841-42 (Nev. 2009) (analogizing a tortious interference with contract claim with injury to personal property).  Unjust enrichment is governed by a four-year statute of limitations. Nev. Rev. Stat § 11.190(2)(c); *In Re AMERCO Derivative*, 252 P.3d at 703.

Wells Fargo argues the plaintiffs knew the facts giving rise to their claims in March 2017 because they knew of the EB-5 requirement to use the funds for the Nevada Project, had concerns about Ly's recommendations at the time he gave them, and used the line of credit for an unrelated project anyway.  That is almost eight years before they filed their complaint in January 2025.  Therefore, it contends, all the plaintiffs' claims should be time-barred.  The plaintiffs respond they did not know and could not have known of the facts giving rise to the claim until the SEC filed its enforcement action in September 2023, less than two years before filing the complaint, so none of the claims should be time-barred.

Where "a defendant's deceptive conduct may prevent a plaintiff from even *knowing* that he or she has been defrauded . . . the statute does not begin to run until the fraud is *discovered*." *Merck & Co. v. Reynolds*, 559 U.S. 633, 644 (2010) (emphasis original) (quotation omitted). Here, it is not apparent from the face of the complaint the plaintiffs should have discovered the facts leading to the SEC enforcement suit.  The plaintiffs allege Wells Fargo's misrepresentations concealed the risks the plaintiffs took that lead to that suit. *See* ECF No. 24 at 10-11 (alleging that Ly assuaged Azarmehr's concerns and said the recommendations would not increase the legal risk to the plaintiffs).

However, it is apparent from the face of the complaint that the plaintiffs discovered or should have discovered the facts giving rise to their claims no later than February 2022. They argue they were simply complying with a subpoena in February 2022 and had no reason to know it would lead to an enforcement suit until the SEC filed it in September 2023. But the SEC's investigation was pointed: the SEC attorney asked about the EB-5 business, the Nevada Project, where the bank accounts were, and who spoke to the EB-5 investors. *Id.* at 15. The SEC also sent a subpoena seeking documents from NSN Lender and NSN Developer and deposed Azarmehr and her secretary. *Id.* Taking the plaintiffs' allegations as true, this investigation irrefutably demonstrates that they discovered or should have discovered that the advice Wells Fargo gave in 2017 regarding the EB-5 funds was not as risk-free as claimed. Therefore, as a matter of law, the statute of limitations began to run no later than February 2022. Because the plaintiffs filed their complaint in January 2025, just less than three years later, only the failure to supervise claim is barred as it has a two-year limitation period. Nev. Rev. Stat § 11.190(4)(e). I therefore dismiss that claim with prejudice.

**B. The plaintiffs plausibly allege fraudulent and negligent misrepresentation claims that are not barred by the economic loss doctrine.**

To state a fraud claim, the plaintiffs must plausibly allege: (1) Wells Fargo made a false representation; (2) Wells Fargo knew or believed the representation was false; (3) Wells Fargo intended to induce the plaintiffs to rely on the false representation; (4) the plaintiffs justifiably relied on the misrepresentation; and (5) damages. *Nev. State Educ. Ass'n v. Clark Cnty. Educ. Ass'n*, 482 P.3d 665, 675 (Nev. 2021). To state a negligent misrepresentation claim, the plaintiffs must plausibly allege (1) Wells Fargo made a false representation; (2) Wells Fargo made the representation during its course of business or in an action in which it had a pecuniary

8

1    interest; (3) Wells Fargo made the representation for the guidance of others in their business

2    transactions; (4) the plaintiffs justifiably relied on the representation; (5) the reliance resulted in

3    pecuniary loss to the plaintiffs; and (6) Wells Fargo did not exercise reasonable care or

4    competence in obtaining or communicating the information. *G.K. Las Vegas Ltd. P'ship v. Simon*

5    *Property Group, Inc.*, 460 F. Supp. 2d 1246, 1262 (D. Nev. 2006); *see also* Restatement

6    (Second) of Torts § 552 (1977).

7         The plaintiffs allege Wells Fargo falsely represented that using the EB-5 funds as

8    collateral for the JL RED line of credit would not violate securities laws, rules, and regulations,

9    and would not increase the plaintiffs' legal risk.  They allege Wells Fargo knew or should have

10   known this was false because it had expertise in EB-5 investments and had NSN Lender's

11   documents requiring the funds to be used only for the Nevada Project.  Further, they allege they

12   justifiably relied on these misrepresentations and, as a result, incurred almost $2 million in

13   defending against the SEC's enforcement suit.  Wells Fargo argues the plaintiffs have not

14   plausibly alleged with particularity a false misrepresentation, justifiable reliance on Ly's advice,

15   or how the allegedly false statements caused the SEC suit.

16        1. The plaintiffs plausibly plead facts showing Wells Fargo made a false representation.

17        The plaintiffs plausibly allege Wells Fargo knew or should have known that opening a

18   brokerage account with EB-5 funds and using those funds as collateral for a line of credit would

19   increase the plaintiffs' legal risks.  They plausibly allege Ly had expertise in EB-5 investments

20   and knew the requirements of the plaintiffs' project, so he knew or should have known using the

21   EB-5 funds in this fashion could invite regulatory scrutiny and "likely would increase the legal

22   risks to Ms. Azarmehr and her companies." ECF No. 24 at 9, 11, 20.  They plausibly allege Ly

23   induced them to rely on his advice so he could profit from the new accounts. *Id.* at 19-20.  Ly's

alleged representations or omissions about increased risks are capable of objective verification and therefore would not necessarily be opinion or puffery. *See Macomb Cnty. Employees' Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092, 1098 (9th Cir. 2022); *Brendon v. Allegiant Travel Co.*, 412 F. Supp. 3d 1244, 1257 (D. Nev. 2019).  The SEC investigation and enforcement suit plausibly show that representing there would be no increased legal risk was false.

However, the plaintiffs do not plausibly plead facts with particularity to show Wells Fargo made a false or negligent representation regarding the legality of the transactions.  The complaint alleges that the SEC brought its enforcement suit only because the plaintiffs used the line of credit to pay off an unrelated debt. ECF No. 24 at 4, 16.  The plaintiffs allege "[o]n or about March 27, 2017, in further reliance on Defendant Wells Fargo and Ly's expertise, representations, and advice, Plaintiff JL RED drew $8.99 million from the JL RED Line of Credit to pay off the balance of [a] JL RED loan for a JL RED project in California." *Id.* at 12. This allegation does not identify what representations and advice Ly gave regarding using the line of credit for the California project and is therefore not particular enough to form the basis for a claim sounding in fraud under Rule 9(b).  In other words, it is not clear from the complaint that the plaintiffs are alleging Ly and Wells Fargo specifically told the plaintiffs they could use the line of credit to pay off the loan for the JL RED project in California.  Additionally, the plaintiffs do not plausibly allege Wells Fargo made a false representation regarding investment suitability because the brokerage account was profitable. *Id.* at 13 (alleging NSN Developer reaped a profit of over $336,000).

//

//

//

10

1    <u>2. The plaintiffs plausibly allege they justifiably relied on Wells Fargo's</u>

2    <u>misrepresentations.</u>

3        Wells Fargo argues that as an immigration attorney, real-estate developer, and the co-

4    founder and CEO of JL RED with significant EB-5 investment experience, Azarmehr is a

5    sophisticated investor and it was not justifiable for her to rely upon Ly's broadly alleged

6    statements, especially where she knew the EB-5 program requirements.  The plaintiffs respond

7    that Azarmehr is not a sophisticated investor, a financial advisor, or a securities attorney, and that

8    simply being highly educated does not preclude her justifiable reliance on Wells Fargo.

9        The plaintiffs plausibly allege their justifiable reliance on Ly's representations.

10   Justifiable reliance "does not impose a duty to investigate absent any facts to alert the defrauded

11   party his reliance is unreasonable.  The test is whether the recipient has information which would

12   serve as a danger signal and red light to any normal person of his intelligence and experience."

13   *Collins v. Burns*, 741 P.2d 819, 821 (Nev. 1987) (simplified).  Azarmehr consulted Ly as a

14   "trusted advisor" on EB-5 investments and sought assurances that using the EB-5 funds as

15   collateral for the JL RED line of credit was legal and would not increase risk. *Id.* at 7, 10.  While

16   the plaintiffs allege Azarmehr focuses her practice on the EB-5 program, they do not allege she

17   has expertise regarding the securities laws that govern it. ECF No. 25-2 at 14.  Rather, they

18   allege Wells Fargo and Ly professed expertise in the EB-5 program and gave assurances to

19   assuage Azarmehr's concerns about increased legal risk. ECF No. 24 at 7, 10-11.  Despite

20   Azarmehr's education and occupation, it is plausible that a normal person of her intelligence and

21   experience relied on assurances regarding areas outside her expertise. *See Rueckl v. InMode,*

22   *Ltd.*, No. 2:19-cv-02186-KJD-NJK, 2020 WL 4289374, at *1, 9 (D. Nev. July 27, 2020) (holding

23

1    that a highly educated dermatologist and surgeon could justifiably rely on misrepresentations

2    regarding stock option sales).

3         <u>3. The plaintiffs plausibly plead causation.</u>

4         The plaintiffs allege that, but for their reliance on Ly's misrepresentations, they "would

5    not have opened the accounts in issue and engaged in the transactions in issue." ECF No. 24 at

6    19. Wells Fargo argues plaintiffs' unilateral decision to use the line of credit to pay an unrelated

7    debt is an intervening cause for the SEC investigation and enforcement suit.

8         The plaintiffs plausibly allege Ly's misrepresentation actually and proximately caused

9    the SEC enforcement suit because, had Azarmehr not opened the brokerage account and

10   collateralized the JL RED line of credit with the EB-5 funds in reliance on Ly's assurances, JL

11   RED would not have been able to use the line of credit for an unrelated project, which caused the

12   SEC enforcement suit. The plaintiffs have pleaded their fraudulent misrepresentation claim

13   about increased legal risks with sufficient particularity, so I deny the motion to dismiss this

14   aspect of the claim. I grant the motion to the extent the claim relies on allegations of false

15   statements of legality or suitability, but grant the plaintiffs leave to amend this part of the claim.

16         <u>4. The plaintiffs' negligent misrepresentation claim is not barred by the economic loss</u>

17         <u>doctrine.</u>

18         Wells Fargo argues the plaintiffs' negligent misrepresentation claim is barred by the

19   economic loss doctrine because the plaintiffs allege purely economic losses. It contends contract

20   law addresses the plaintiffs' alleged losses because contracts govern the parties' relationship.

21   The plaintiffs respond that the economic loss doctrine does not apply because they also plead

22   reputational damages and because there is a difference between Wells Fargo's duties underlying

23   the tort claim and the contract claim.

1    "The economic loss doctrine is a judicially created rule" that "marks the fundamental

2 boundary between contract law, which is designed to enforce the expectancy interests of the

3 parties, and tort law, which imposes a duty of reasonable care and thereby generally encourages

4 citizens to avoid causing physical harm to others." *Terracon Consultants W., Inc. v. Mandalay*

5 *Resort Grp.*, 206 P.3d 81, 85-86 (Nev. 2009) (en banc) (simplified).  Its purpose is "to shield

6 defendants from unlimited liability for all of the economic consequences of a negligent act,

7 particularly in a commercial or professional setting, and thus to keep the risk of liability

8 reasonably calculable." *Id.* at 83.  The rule does not bar a negligent misrepresentation claim

9 where "the duty breached . . . arises independent of the contract" and "the representations are

10 extraneous to the contract itself." *Cmty. Sch. Initiative v. Vanguard Field Strategies, LLC*, No.

11 2:23-cv-00069-APG-EJY, 2025 WL 959379, at *16 (D. Nev. Mar. 31, 2025) (quoting *United*

12 *Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F. 3d 1207, 1227 (10th Cir. 2000), *aff'd*, 532

13 U.S. 588, (2001); *Rich Prods. Corp. v. Kemutec, Inc.*, 66 F. Supp. 2d 937, 969 (E.D. Wis. 1999),

14 *aff'd*, 241 F.3d 915 (7th Cir. 2001)).

15    "The doctrine bars unintentional tort actions when the plaintiff seeks to recover purely

16 economic losses," subject to exceptions "when strong countervailing considerations weigh in

17 favor of imposing liability." *Terracon*, 206 P.3d at 86 (simplified).  Thus, the economic loss

18 doctrine bars a plaintiff from asserting a negligence claim for economic losses "unless there is

19 personal injury or property damage." *Id.* at 87.  However, some courts "have made exceptions to

20 allow such recovery in certain categories of cases, such as negligent misrepresentation and

21 professional negligence actions against attorneys, accountants, real estate professionals, and

22 insurance brokers." *Id.*

23

The plaintiffs do not dispute the existence of their contracts with Wells Fargo. ECF No. 24 at 11.  They argue the economic loss doctrine does not apply because they allege reputational harm in addition to economic harm. *Id.* at 19; *see Lopez v. Javier Corral, D.C.*, Nos. 51541, 51972, 367 P.3d 745, 2010 WL 5541115, at *4 (Nev. Dec. 20, 2010) (holding that damages to the plaintiff's reputation and business were damages to intangible property and therefore not economic loss).  However, their allegations are too conclusory to plausibly plead reputational damages, so the economic loss doctrine could apply. *Cardonet, Inc. v. IBM*, No. C-06-06637 RMW, 2007 WL 518909, at *6 (N.D. Cal. Feb. 14, 2007) (finding the economic loss doctrine barred claims where the plaintiff alleged reputational damage in the "most conclusory of fashions").

Nonetheless, at this stage the economic loss doctrine does not bar the negligent misrepresentation claim.  The plaintiffs allege Wells Fargo had a duty to impart "full and correct information" because of the parties' relationship as a broker and a client, not because of the terms in the contracts. *Id.* at 21.  Therefore, I cannot find as a matter of law that the economic loss doctrine bars the negligent misrepresentation claim.

**C. The breach of fiduciary duty claim does not plausibly allege causation.**

To state a claim for breach of fiduciary duty, the plaintiffs must plausibly allege: (1) Wells Fargo owed them a fiduciary duty; (2) Wells Fargo breached that duty; and (3) the plaintiffs were damaged as a result. *Guzman v. Johnson*, 483 P.3d 531, 538 (Nev. 2021) (en banc).  Under Nevada law, a breach of fiduciary duty claim sounds in fraud. *See Nev. State Bank*, 801 P.2d at 1382.  Thus, it must be pleaded with particularity under Rule 9(b).

//

//

14

1    <u>1. The plaintiffs adequately allege that Wells Fargo owed a fiduciary duty.</u>

2    The plaintiffs allege that because Wells Fargo had de facto control over NSN

3 Developer's and JL RED's accounts to execute transactions and withdraw funds for margin calls,

4 Wells Fargo owed them a fiduciary duty. ECF No. 24 at 8, 22.  They allege Wells Fargo built a

5 "special relationship of trust and confidence" with them, also giving rise to a fiduciary duty. *Id.*

6 at 7-8, 22.  Wells Fargo argues that because it did not have discretionary trading authority over

7 the plaintiffs' accounts, it did not owe a fiduciary duty.  It also argues there was no special

8 relationship because the parties were not on unequal terms.

9    "[T]here is no general fiduciary duty inherent in an ordinary broker/customer

10 relationship," but "when a relationship of trust and confidence exists between a broker and a

11 client, a broker must disclose all facts material to that relationship." *United States v. Laurienti*,

12 611 F.3d 530, 540 (9th Cir. 2010) (quotation omitted).  The existence of a special relationship is

13 a factual question requiring the plaintiffs to show "(1) the conditions would cause a reasonable

14 person to impart special confidence and (2) the trusted party reasonably should have known of

15 that confidence." *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 881 (9th Cir. 2007)

16 (quotation omitted) (applying Nevada law).  Some courts have found that when customers

17 routinely follow their broker's recommendations, the broker exercises de facto discretionary

18 authority over the customers' accounts, which can establish a fiduciary relationship. *Davis v.*

19 *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 906 F.2d 1206, 1217 (8th Cir. 1990); *see also SEC*

20 *v. Brookstreet Secs. Grp.*, No. SACV 09-1431 DOC (ANx), 2012 WL 13046847, at *5 (C.D.

21 Cal. June 29, 2012) (reversed on other grounds).

22    Here, the plaintiffs plausibly allege the existence of a special relationship of trust and

23 confidence giving rise to a fiduciary duty.  They allege Ly targeted them, gave Azarmehr his

personal contact information, traveled to China to do business with her colleague, and introduced her to a successful EB-5 business executive to vouch for his credibility. ECF No. 24 at 7-9, 22. Further, the plaintiffs allege Wells Fargo "occupied a superior position" over them concerning the management and control of the accounts. *Id.* at 22.  This plausibly alleges a special relationship of trust.

However, the plaintiffs do not plausibly allege Wells Fargo's de facto control over their accounts created a fiduciary duty because they do not plead that they routinely followed Ly's recommendations.  Instead, they allege they followed one set of Ly's recommendations in March 2017. *Id.* at 8-9.  And alleging the authority to execute transactions and withdraw funds for margin calls does not plausibly create a fiduciary relationship. *See Martinez Tapia v. Chase Manhattan Bank, N.A.*, 149 F.3d 404, 412 (5th Cir. 1998) (holding a broker managing a nondiscretionary trading account is generally confined to execution only, and thus no special relationship arises); *Wehrs v. Benson York Grp.*, No. 07 C 3312, 2008 WL 753916, at *3 (N.D. Ill. Mar. 18, 2008) (holding that a clearing broker did not have a fiduciary duty when selling a plaintiff's stock on a margin call).

   2. The plaintiffs do not plausibly allege Wells Fargo breached its duty, causing damages.

The plaintiffs allege Wells Fargo breached its fiduciary duty by failing to follow up on three red flags "that would have caused them to discover that Ly was mismanaging Plaintiffs' investments and accounts." ECF No. 24 at 23.  These red flags include failing to conduct an adequate investigation when Wells Fargo terminated Ly in 2019, failing to monitor unusual activity in NSN Developer's account when the first margin call occurred 625 days after the account was opened, and failing to re-examine Ly's recommendations to plaintiffs after Ly refused to cooperate with FINRA's investigation. *Id.* at 14.  However, the plaintiffs do not

plausibly allege these breaches caused the SEC to file the enforcement suit.  They allege the SEC filed suit because they used the line of credit collateralized by the EB-5 funds to pay off debt on an unrelated project.  But the alleged red flags occurred well after that transaction. *Id.* at 4, 14, 16.  Therefore, even if failing to follow up on the red flags constituted a breach of fiduciary duty, the plaintiffs have not plausibly alleged this conduct caused their damages.  I thus dismiss the breach of fiduciary duty claim without prejudice.

**D.  The breach of contract claim does not plausibly allege the required elements.**

To prevail in a breach of contract action the plaintiffs must show: (1) the existence of a valid contract; (2) the plaintiffs' performance; (3) a breach by Wells Fargo; and (3) damage as a result of the breach. *Iliescu, Tr. Of John Iliescu, Jr. & Sonnia Iliescu 1992 Fam. Tr. v. Reg'l Transp. Comm'n of Washoe Cnty.*, 522 P.3d 453, 458 (Nev. App. 2022).  The plaintiffs have "the burden of proving both the fact of damages and the amount thereof." *Mort Wallin of Lake Tahoe, Inc. v. Com. Cabinet Co.,* 784 P.2d 954, 955 (Nev. 1989).

The plaintiffs allege Wells Fargo had and breached contractual duties "to provide professional brokerage services, investment advisory services, and other financial services and advice." ECF No. 24 at 24.  But they merely recite the elements of the claim and allege only legal conclusions, which is insufficient. *Bell Atl. Corp.*, 550 U.S. at 555.  Wells Fargo is not on fair notice of the claim simply because the plaintiffs reallege and incorporate all prior allegations. ECF No. 24 at 24.  I thus dismiss this claim without prejudice.

**E.  The tortious interference with contract claim does not plausibly allege that Wells Fargo disrupted the plaintiffs' contract.**

To state a claim for intentional interference with contractual relations, the plaintiffs must plausibly allege (1) a valid and existing contract; (2) Wells Fargo knew of the contract; (3) Wells

1  Fargo engaged in intentional acts intended or designed to disrupt the contractual relationship;

2  (4) actual disruption of the contract; and (5) resulting damage. *Sutherland v. Gross*, 772 P.2d

3  1287, 1290 (Nev. 1989).

4  The plaintiffs allege Wells Fargo knew of the agreement for NSN Lender to loan EB-5

5  funds to NSN Developer for the execution of the Nevada Project. ECF No. 24 at 25.  They allege

6  Wells Fargo engaged in "intentional acts designed to disrupt" that contract by recommending the

7  use of the EB-5 funds as collateral for the JL RED line of credit. *Id.*  Yet plaintiffs also allege

8  they completed the Nevada Project and all investors satisfied their requirement for a visa under

9  the program. *Id.* at 18.  The plaintiffs argue the SEC litigation was inherently disruptive

10  regardless of impact on the Nevada Project.  But this would mean the plaintiffs themselves

11  disrupt every one of Wells Fargo's contracts by bringing the current suit, which is an absurd

12  result.  The plaintiffs do not plausibly allege how Wells Fargo tortiously interfered with the

13  contract between NSN Lender and NSN Developer.

14  Wells Fargo also argues this claim is barred by the economic loss doctrine.  But that

15  doctrine bars unintentional tort actions, not intentional tort actions. *Halcrow, Inc. v. Eighth Jud.*

16  *Dist. Ct.*, 302 P.3d 1148, 1154 n.2 (Nev. 2013), *as corrected* (Aug. 14, 2013).[3]  I therefore

17  dismiss this claim not because it is barred by the economic loss doctrine, but because the

18  plaintiffs have not plausibly alleged a disrupted contract.

19  **F.  The unjust enrichment claim is not adequately pleaded in the alternative.**

20  "Unjust enrichment is the unjust retention of a benefit to the loss of another, or the

21  retention of money or property of another against the fundamental principles of justice or equity

22

23  [3] To the extent the court found otherwise in *Desert Salon Servs., Inc. v. KPSS, Inc.*, No. 2:12-CV-1886 JCM (CWH), 2013 WL 497599, at *5 (D. Nev. Feb. 6, 2013), I disagree.

18

and good conscience." *Topaz Mutual Co. v. Marsh*, 839 P.2d 606, 613 (Nev. 1992) (quotation omitted). To state a valid claim for unjust enrichment, the plaintiffs must allege: (1) they conferred a benefit on Wells Fargo; (2) Wells Fargo appreciated that benefit; and (3) Wells Fargo accepted and retained the benefit under circumstances that would make that retention unjust. *Id.* A claim "based on a theory of unjust enrichment is not available when there is an express, written contract." *Leasepartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975*, 942 P.2d 182, 187 (Nev. 1997).

The plaintiffs do not dispute the existence of NSN Developer's and JL RED's valid and enforceable account contracts with Wells Fargo. ECF No. 24 at 11. Because they do not plead the unjust enrichment claim in the alternative (based on the potential invalidity or unenforceability of those contracts), this claim is unavailable to them. The plaintiffs argue Azarmehr and NSN Lender do not have contracts with Wells Fargo, but they do not also plausibly allege how those plaintiffs conferred a benefit on Wells Fargo. I thus dismiss this claim without prejudice.

## III. CONCLUSION

I THEREFORE ORDER that Wells Fargo's motion to dismiss **(ECF No. 30) is GRANTED IN PART**. I deny the motion as to the plaintiffs' fraudulent and negligent misrepresentation claims. I grant the motion as to all other claims. The plaintiffs' claims for breach of fiduciary duty, breach of contract, tortious interference with contract, and unjust enrichment are dismissed without prejudice. The claim for failure to supervise is dismissed with prejudice because it is time-barred.

I FURTHER ORDER that the plaintiffs may file an amended complaint, if sufficient facts exist, by January 6, 2026.  If the plaintiffs do not file an amended complaint by that date, only the fraudulent and negligent misrepresentation claims will proceed.

DATED this 3rd day of December, 2025.


_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE